UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KELLY BEASLEY**                                **CASE NO.  6:21-CV-03276**

**VERSUS**                                       **JUDGE ROBERT R. SUMMERHAYS**

**SCHOOL DISTRICT BD OF EDUCATION**              **MAGISTRATE JUDGE PATRICK J.**
**IBERIA PARISH ET AL**                          **HANNA**

## REPORT AND RECOMMENDATION

Before the Court are two (2) motions to dismiss, regarding Plaintiff's original

and amended complaint, filed by defendants Iberia Parish School Board ("IPSB"),

Iberia Parish Superintendent of Schools Carey Laviolette ("Superintendent"),

Assistant Iberia Parish Superintendent of Schools Jennifer Joseph ("Assistant

Superintendent"), Nursery O. McNeal, Elvin Pradia, Jesse J. McDonald, Raymond

Q. Lewis, Debra A. Savoie, Michael W.S.L. Mayeux, Dan L. Leblanc, Sr., Brad M.

Norris, Dana P. Dugas, Rachel L. Segura, Kathleen B. Rosamond, Arthur L.

Alexander, Danny D. Sequra, and Kenric P. Freeman (collectively "School Board"),

Jennifer Derouen ("Derouen"), and Dina Bourque ("Bourque") (collectively

"Defendants"). (Rec. Docs. 4, 11).  Plaintiff opposes dismissal. (Rec. Doc. 14). The

undersigned issues the following report and recommendation pursuant to 28 U.S.C.

§ 636.  Considering the evidence, the law, and the arguments of the parties, and for

the reasons explained below, the Court recommends that Defendants' first motion to

dismiss (Rec. Doc. 4) be DENIED as MOOT and Defendants' second motion to dismiss (Rec. Doc. 11) be GRANTED in full and, accordingly, Plaintiffs' claims be DENIED and DISMISSED as explained below.

## Background

This case arises from the imposition of a statewide mask mandate ("mandate") by Louisiana Governor John Bel Edwards ("Gov. Edwards"). Announced in Proclamation Number 137 JBE 2021, the mandate required, *inter alia*, persons age five (5) and older to wear face coverings while "indoors in any place outside of a private residence[.]" The Louisiana Board of Elementary and Secondary Education ("BESE") is a quasi-legislative body charged with the promulgation of policies pertaining to Louisiana's public education system.[1]   In December 2020 BESE revised Bulletin 741 ("bulletin"), containing the Louisiana Handbook for School Administrators, to include minimum standards for the safe operation of schools regarding COVID-19-related protocols during the school year.[2]   As stated in the bulletin, BESE's specific policy as to face coverings ("masks") is "superseded by any statewide or district specific mandate issued by the governor."[3]   Thus, by issuance of Proclamation Number 137 JBE 2021, the mandate supplanted BESE's policy regarding required masking in schools.  By successive proclamation, issued

---

[1]   LA. CONST. Art. VIII § 3 (1974).
[2]   LR 46:1672 (December 2020).
[3]   LA. ADMIN. CODE tit. 28, pt. 115, § 403(E)(1).

October 26, 2021, Governor Edwards lifted the general mandate, but extended the mandate for all Louisiana K-12 schools, subject to the caveat that school districts may opt out of the mandate if they follow isolation and quarantine protocols as recommended by the U.S. Centers for Disease Control ("CDC").[4]  IPSB opted out of the mandate in November of 2021.[5]

Plaintiff Kelly Beasley ("Plaintiff" or "Beasley"), is the parent of two (2) minor children, Z.C. and M.B., enrolled in Iberia Parish Schools during the 2021-2022 school year.[6]  The Court surmises Z.C. was enrolled at Iberia Middle School, at which Bourque is the Principal, while M. B. was enrolled at Caneview Elementary School, at which Derouen is the Principal.[7]  Plaintiff alleges that, at some point during the school year, she withdrew her children from their respective schools to homeschool them; a decision she alleges she was forced into by the prospect of religious interference posed by the mandate.[8]

Plaintiff, proceeding *pro se*, filed the instant suit on September 13, 2021 alleging the mandate infringed upon her children's free exercise of religion and constituted a violation of federal law. Plaintiff's original complaint asserted claims for religious discrimination, due process violation, and violation of the Fourteenth

---

[4]      Proclamation Number 203 JBE 2021.
[5]      https://www.iberianet.com/news/no-more-mask-mandate-for-iberia-schools/article_cff37d66-3df0-11ec-a1aa-7733d887ffcd.html
[6]      Rec. Doc. 1 at ¶ 4; Rec. Doc. 10 at ¶ 5.
[7]      Rec. Doc. 1 at ¶ 5; Rec. Doc. 10 at ¶¶ 4 - 5.
[8]      Rec. Doc. 10 at ¶ 6.

Amendment's equal protection clause.   Plaintiff sought "relief from damages incurred, at the maximum rate permitted by law."   The original complaint further clarified that Plaintiff was seeking "monetary compensation based on the merit of this case."[9]   Plaintiff amended her complaint on November 22, 2021, adding a variety of claims including violations of the Americans with Disabilities Act ("A.D.A."), as well as corresponding Louisiana law, and adding claims for declaratory and injunctive relief to her prayer for monetary relief.[10]

Plaintiff objects to the implementation of the mandate in Iberia Parish schools based on her religious belief that requiring Iberia Parish school students to wear a mask during school prevents the free exercise of her children's Catholic faith. Plaintiff alleges on or about August 11, 2021, Plaintiff's son, M. B. was placed in an "isolation classroom" and left without adequate supervision for "approximately an hour or more, while crying to the point of hyperventilating, without adequate supervision" until she could pick him up from Caneview Elementary.[11]   Plaintiff claims she was told that M. B. refused to wear a mask while at school and, pursuant to the mandate, would not be permitted to remain on campus.[12]   Plaintiff alleges M. B. was "traumatized" by this experience and continues to display residual effects of

---

[9]      Rec. Doc. 1 at p. 5.
[10]     Rec. Doc. 10 at ¶¶ 78-83.  ("Plaintiff replaces paragraph of RELIEF in its entirety to read as follows:" *emphasis original*).
[11]     *Id.* at p. 6.
[12]     Rec. Docs. 1, 10 at ¶ 4.

his time in isolation.[13]  The Court infers from Plaintiff's complaint that her daughter, Z.C., similarly left Iberia Middle School, rather than comply with the mandate during the 2021-22 school year, although the details of Z.C.'s unenrollment are not included in the complaint.[14]

After being informed that her children must comply with the mandate to remain on campus for instruction at their respective schools, Plaintiff submitted what she refers to as a "religious exemption" to both Iberia Middle School and Caneview Elementary School seeking to have her children exempted from compliance with the mandate based on the belief that, as Catholics, M. B. and Z. C. would be prevented from the practice of their religion if made to comply with the mandate.  Specifically, Plaintiff's submission, styled in part as a letter to each school outlined a belief that

> people are relational beings and that these relationships mirror the relationship between God, Jesus Christ and the Holy Spirit…I believe that Christians are called to communicate God's words and message of love to the world…I…write to state my religious objections to a mask mandate in our school.  I do not consent to forcing a face covering on my child, who is created in the image of God. Masks lead to anti-social behaviors, interfere with religious commands to share God's love with others, and interfere with relationships in contravention of the Bible.[15]

With her letter, which Plaintiff purports is also signed by a Catholic priest, Plaintiff attached a Louisiana Department of Education "Statement of Exemption

---

[13]   Rec. Doc. 10 at pp. 6-7.
[14]   *Id.* at ¶ 5(b), *et seq.*
[15]   Rec. Doc. 1-2.

from Immunizations" which she altered to add the phrase "and Mask[.]"[16] Correspondence attached to Plaintiff's complaint indicates neither Iberia Middle School, nor Caneview Elementary School granted Plaintiff's children an exemption based on Plaintiff's requests.[17]  Such correspondence further shows that, following a number of additional unexcused absences by M.B., Caneview Elementary Principal Jennifer Derouen informed Plaintiff that M.B.'s unexcused absences had been referred to the District Attorney under the "FINS program[.]"[18]

Plaintiff's complaint, as amended, asserts a variety of claims arising from the facts alleged:

1. Claims under Title VII of the Civil Rights Act of 1964 alleging religious discrimination by Defendants as to Plaintiff's minor children;

2. Claims under the Americans with Disabilities Act ("A.D.A.") for "perceived as" disability discrimination as to her minor children;

3. Federal Due Process claims stemming from Defendant Derouen's alleged failure to follow proper protocols before referring Plaintiff to the District Attorney based on her child's unexcused absences.

---

[16]    *Id.* at pp. 7, 10.
[17]    Rec. Doc. 1-2 at pp. 5-6, 9.
[18]    *Id.* at p. 13; "FINS program" refers to the Families in Need of Services program which takes referrals of "status offenders" including, but not limited to truancy complaints. https://www.lasc.org/children_families/WHAT_IS_FINS_2018-19.pdf

4.      Louisiana law due process claims arising from the same facts as #3;

5.      Louisiana law claims for disability discrimination; and

6.      Claims under 28 U.S.C. § 1343, asserting a violation of Plaintiffs' civil rights.

7.      Louisiana constitutional claims under Art. I, § 3 for "violation of right of individual dignity."

8.      Louisiana constitutional claims under Art. I, § 20 alleging violations of Louisiana's prohibition on inhumane treatment.

9.      Claims asserting violations of Art. 101 of the Louisiana Children's Code.

10.     Claims for violation of Nuremburg Code of 1947, alleging experimentation without consent.

11.     Claims under 18 U.S.C. §§ 241, 242, alleging a conspiracy among Defendants to deprive Plaintiffs of their rights under the U.S. Constitution.

12.     A request for a jury trial under the Seventh Amendment.

13.     Claims against Defendants for "Violation of God Given Unalienable Right" under the Tenth Amendment.

14.      Claims against Defendants for the intentional tort of false imprisonment under Louisiana law.[19]

Plaintiffs' amended prayer for relief includes a prayer for a judgment, "[p]ermanently enjoin[ing] Defendants…and all persons in active concert or participation with any of them, from implementing or enforcing the mask policy…that is not in compliance with applicable law."[20]

Defendants filed the instant motions to dismiss as to Plaintiff's original and amended complaints.  The motions are briefed and properly before the Court for consideration.

## **Law and Analysis**

The Court notes at the outset that Plaintiff's complaint, totaling thirty-five (35) pages in length as amended, purports to state sixteen (16) different claims against Defendants.[21]  Beasley's complaint lists "Kelly Beasley, Z.C., M.B., minors By and through their parent, Kelly Beasley" as plaintiffs to this suit.  As a threshold inquiry, the Court must determine whether Plaintiff has standing in this matter.[22]

---

[19]      Rec. Doc. 10, generally.
[20]      *Id.* at ¶ 83.
[21]      Rec. Doc. 10, generally.
[22]      *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) (internal citations omitted).

## I.      Standing

Article III of the Constitution of the United States grants to federal courts jurisdiction over "Cases" and "Controversies[.]"[23]  The doctrine of standing to sue is one deriving from the courts' Article III "case and controversy" jurisdictional limitation.[24]  Jurisprudence establishes three (3) requisite elements of standing:

> (1) …an injury in fact; (2) fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision.[25]

A plaintiff must demonstrate each of these elements in order to prove standing to bring a claim.[26]  "The standing inquiry focuses on whether plaintiff is the proper party to bring this suit."[27]  A plaintiff asserting multiple claims bears the burden of establishing standing as to each claim.[28]

28 U.S.C. § 1654 provides that an individual may file a civil suit on her own behalf in federal court.  In such an instance, the plaintiff, as here, acts "*pro se*[.]"[29]  The statutory authority to act *pro se* before the court does not permit a non-attorney to represent another person before the court.[30]  This prohibition applies to the parents

---

[23]     U.S. CONSTITUTION, Art. 3, § 1.

[24]     *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[25]     *Id.*, at 337 citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[26]     *Id.*

[27]     *Raines*, 521 U.S. at 818.

[28]     *Davis v. Fed. Election Comm'n.*, 554 U.S. 724, 734 (2008).

[29]     *Leyfert v. Com. Of Pa. House of Representatives*, 2005 WL 3433995 *2 citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

[30]     *Id.*

or guardians of minor children.  A parent may not assert "next friend" capacity claims on behalf of a minor child as a *pro se* litigant.[31]

In this case, the majority of Plaintiff's purported claims are brought on behalf of her two (2) minor children, Z.C. and M.B.  Plaintiff lacks standing to assert such claims in this case.  As minor children, M.B. and Z.C. lack procedural capacity to assert their own claims under Louisiana law, applicable here since Louisiana is the domicile of all Plaintiffs.[32]  Given the foregoing law and jurisprudence, all claims purportedly brought by Plaintiff on behalf of her minor children will be dismissed without prejudice.[33]

Proceeding *pro se* under 28 U.S.C. § 1654, Plaintiff may bring claims on her own behalf.  Considering Plaintiff's *pro se* status, the Court construes Plaintiff's filings liberally, holding her pleadings to a more lenient standard than that applied to attorneys.[34]  Construing *pro se* pleadings according to this standard prevents the

---

[31]     *Sprague v. Dept. of Family and Protective Servs.*, 547 Fed.App'x. 507, 508 (5th Cir. 2013) citing *Johnson v. Lufkin Daily News*, 48 Fed. Appx. 917 (5th Cir. 2002).  *Smith v. Goree*, Civ. Act. No. 17-CV-482, 2018 WL 752354, *2 (W.D. La. 2018) citing *Chatman v. Miss. High Sch. Athletics Ass'n.*, 552 Fed. Appx. 335, 337 (5th Cir. 2014) (citing *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005)) (Fifth Circuit does not permit pro se litigants to appear in a representative capacity) and *Aduddle v. Body*, 277 Fed. Appx. 459, 462 (5th Cir. 2008) (citing *Myers*, 418 F.3d at 401) (Fifth Circuit's prohibition on pro se litigants appearing in a representative capacity applied equally to parents or guardians seeking to enforce rights of minor children).
         An exception to this rule applies as to parents who seek to represent minor children in Social Security appeals in federal courts.  *Harris v. Apfel*, 209 F.3d 413 (5th Cir. 2000).  The instant case does not present facts falling within this exception.
[32]     Fed. R. Civ. P. 17(b)(1) (providing that the capacity of any individual to sue or be sued is determined by the law of the individual's domicile); La. C.C.P. Art. 683 (providing that an unemancipated minor child lacks the procedural capacity to sue).  The Court assumes for these purposes that the minor children M.B. and C.Z. are unemancipated.  Plaintiff's complaint avers that the minor children live with her.  Plaintiff is domiciled in Louisiana; residing in New Iberia, Louisiana.  (*See* Rec. Docs. 1, 10).
[33]     *Morgan v. Texas*, 251 Fed. App'x.  894, 896 n. 2 (5th Cir. 2007).
[34]     *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

loss of rights that may otherwise result from the sort of legally inartful drafting common in *pro se* cases.[35]

Plaintiff's suit names the individual members of the Iberia Parish School Board, the Iberia Parish School Board as a body, both the Superintendent and Assistant Superintendent of Iberia Parish, as well as two school principals, as defendants.  Suits against a parish school boards are not considered suits against an arm of the state for Eleventh Amendment sovereign immunity purposes because their funding is largely local and, therefore, a judgment against these defendants would not tax the state treasury.[36]  Accordingly, suits against the Iberia Parish Superintendent and Assistant Superintendent, the school board and school board members in their official capacity are similarly exempted from Eleventh Amendment sovereign immunity, as they are not "state officials" for this purpose.[37]  Applying the foregoing logic neither the Iberia Parish Superintendent and Assistant Superintendent, nor principals Bourque and Derouen are "state officials" in this matter.

---

[35]     *Cledera v. United States*, 834 Fed. App'x 969, 972 (5th Cir. 2021) citing *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

[36]     *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131-32 (5th Cir. 1986).  The Eleventh Amendment is a bar to suits against states, state agencies, or state officials in their official capacities, except where the state has clearly and unequivocally waived its sovereign immunity.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984).  According to the *Ex Parte Young* doctrine, an exception exists regarding suits against such parties alleging a violation of federal law.  209 U.S. 123 (1908).

[37]     *Smith v. Concordia Parish School Bd.*, 387 F. Supp. 887, 891 (W.D. La. 1975) (permitting claims against individual school board members).

## II.     Injunctive Relief and Mootness

As outlined above, the mandate imposed on Louisiana's K-12 schools was amended to permit individual school boards to opt out, provided any such school board adheres to CDC-recommended isolation and quarantine procedures.[38] Plaintiff seeks, in addition to monetary relief, declaratory relief in the form of a judgment from this court declaring mask mandates in Iberia public schools to be unconstitutional, and a permanent injunction[39] preventing the imposition of the mandate in Iberia Parish schools and further enjoining Defendants from implementing any such mandate in the future.[40]

As a party seeking preliminary injunctive relief, Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) that she will suffer irreparable injury without the injunction; (3) the threatened injury to Plaintiff outweighs the threatened harm to the party she seeks to enjoin; and (4) granting the injunction will not disserve the public interest.[41]  "A plaintiff seeking injunctive relief, unlike a

---

[38]      203 JBE 2021 (10/26/2021) lifted the statewide mask mandate effective October 27, 2021, subject to parameters applicable to, inter alia, K-12 public and private schools.
[39]      The Court notes here that Plaintiff's complaint prays for "permanent" injunctive relief.  Since such relief is not available absent a full trial, we construe Plaintiff's complaint as one for both preliminary and permanent injunctive relief.  Our analysis proceeds under that theory.
[40]      Rec. Doc. 10 at ¶¶ 79-83.
[41]      *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

plaintiff seeking damages, must establish more than the existence of a 'past wrong' to satisfy the injury-in-fact requirement" of Article III standing.[42]

We begin this portion of analysis with the observation that the mandate at issue in this case is no longer in effect.   As stated above, the Iberia Parish School Board opted out of the mandate in November of 2021, as permitted by Gov. Edwards' proclamation.[43]  An action for injunction does not become moot because the conduct complained of was terminated, if there is a possibility that the conduct will recur.[44]  The party arguing in favor of mootness based on voluntary conduct bears a heavy burden to establish the conduct at issue may not reasonably be expected to recur.[45]

In the instant matter, the cessation of the mandate in Iberia Parish schools was based on the authority of Gov. Edwards' October 26, 2021 Proclamation.  A recent decision by the Middle District of Louisiana in *Spell v. Edwards* is relevant to the issue of mootness in this case.[46]  In *Spell*, the Court considered injunctive relief claims based on allegations that Louisiana's restrictions on the size of religious gatherings violated the Equal Protection Clause.  Prior to the Court's ruling, the

---

[42]     *Smith v. Board of Commissioners of Louisiana Stadium and Exposition District*, 371 F.Supp.3d 313, 321 (E.D. La. 2019) quoting *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (internal citations omitted).
[43]     203 JBE 2021 (10/26/2021).
[44]     *Allee v. Medrano*, 416 U.S. 802, 810-11 (5th Cir. 2021) (internal citations omitted); *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (internal citations omitted).
[45]     *Id.*
[46]     Civ. Act. Nos. 20-cv-00282 and 20-cv-00423, 2022 WL 131249 (M.D. La. 1/12/2022).

proclamations imposing Louisiana's religious gathering restrictions expired and, as of the date of the Court's ruling, were not reinstated.  Based on Louisiana's track record of easing COVID-19 gathering restrictions, the Court affirmed its prior order declaring Spell's claims for injunctive relief moot.  Distinguishing that case from *Tandon v. Newsom*, a recent case before the U.S. Supreme Court involving constitutional challenges to California's restrictions on the size of religious gatherings, the Middle District of Louisiana observed the facts underlying each case to be sufficiently different as to justify different results.[47]

In *Tandon*, the U.S. Supreme Court was presented with a COVID-19 restriction on religious events still in effect at the time of its ruling and California's track record of prolonging such restrictions.  The facts before the Court in *Spell* were, as noted by the Court, much different.  Louisiana allowed its restriction at issue to expire and, as of the date of Court's opinion, such restriction had been so expired for approximately ten (10) months.  Again, the Court took account of what it saw as an undeniable trend in Louisiana away from COVID-19 restrictions.[48]  Based on its conclusion that the plaintiff failed to demonstrate a reasonable likelihood of

---

[47]     141 S.Ct. 1294 (2021).
[48]     *Spell*, 2022 WL 131249 at *9-10.

reinstatement of the restrictions at issue, the Middle District of Louisiana determined Spell's claims to be moot.[49]   *Spell* is currently on appeal to the U.S. Fifth Circuit.[50]

Applying the reasoning of *Spell* in this matter, it may be that Beasley's claim for injunctive relief is moot.  The restriction at issue was voluntarily lifted and parish school boards were permitted to opt out of the mandate.  No reinstatement of the mandate appears likely.  However, this Court recognizes the difference in the two types of restrictions and views this legal issue as undecided within the Fifth Circuit. Given the uncertainty regarding a finding of mootness in this case, the undersigned will proceed with further analysis, noting the result is the same under either premise.

We now turn to the first element required for a grant of injunctive relief: a showing of likely success on the merits.  For the reasons expressed below, this Court finds no likelihood of success as to any individual claim by Plaintiff in this matter. The court's analysis of Plaintiff's claims is conducted pursuant to Fed. R. Civ. P. 12(b)(6), which requires that we accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[51]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face'"[52]  A claim is facially plausible "when the plaintiff pleads the

---

[49]     *Id.*
[50]     Appeal filed February 11, 2022 before the U.S. Fifth Circuit Court of Appeals.  *See* Court of Appeals Docket No. 22-30075.
[51]     *In re Katrina Canal Breaches*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Construction Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).
[52]     *Id.*

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[53]  Although the Court accepts as true all well-pleaded facts, it is not required to "strain to find inferences favorable to the plaintiff."[54]  Neither is the court required to accept as true "legal conclusions couched as a factual allegation."[55]

### A.    Law of Mask Mandates

Courts presented with constitutional challenges to mask requirements in a variety of settings have routinely found that mask mandates do not violate a protected liberty interest.[56]  Similarly, courts considering the allegation that mask mandates violate religious freedom uniformly find that such mandates create no undue burden on the free exercise of religion.[57]  Specifically, courts applying the rational basis standard of review have found that mask mandates are "rationally related to a legitimate government interest" that, although Plaintiff may disagree

---

[53]     *Bell Atlantic v. Twombly*, 550 U.S. 555, 570 (2007).

[54]     *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[55]     *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[56]     *Zinman v. Nova Southeastern Univ.*, 2021 WL 4025722 (S.D. Fla. 2021) (finding no injury-in-fact where plaintiff alleged he was prevented from participating in an employment opportunity by operation of the Palm Beach County mask mandate, which ran afoul of his Jewish faith); *Whitfield v. Cuyahoga County Public Library Foundation*, 2021 WL 1964360 (N.D. Ohio, 2021) ("As an initial matter, there is no general constitutional right to wear, or to refuse to wear a mask in public places…federal, state and local governments may govern what must be worn in public places, particularly when the health and safety of the general public are at issue."); *Denis v. Ige*, 538 F.Supp.3d 1063 (D. Hawai'I 2021) (concluding mask mandate was "rational measure" designed to accomplish the state and county goals of promoting public health by limiting the spread of COVID-19; *Cangelosi v. Sheng*, Civil Action No. 20-CV-1989, *3-4, 2020 WL 5960682 (E.D. La. Oct.8, 2020) (rejecting *pro se* plaintiff's arguments that mask mandates constitute infringement on fundamental rights, including free speech and privacy).

[57]     *Zinman v. Nova Southeastern Univ.* at *12 citing *Church of the Lukumi Babalu Aye*, 508 U.S. 520, 543) (noting that mask mandates are neutral law because they are not borne of the motivation to "infringe upon or restrict practices because of their religious motivation."); *Delaney v. Baker*, 511 F.Supp.3d 55, (D. Mass. 2021); *Cangelosi v. Edwards*, 2020 WL 6449111 *5 (E.D. La. 2020) citing *Cangelosi v. Sheng* at *4.

with regarding the efficacy of masks, clearly lies within the realm of the government's legitimate goal of safeguarding its citizens from illness and death.[58]

Here, Plaintiff fails to allege that she was personally subjected to mandatory masking under the Iberia Parish schools mandate.  Instead, Plaintiff's individual claim is more attenuated.  Plaintiff alleges that she was prevented from continuing her employment by the mandate, as it forced her to withdraw her children from in-person school to homeschool them, else she would be subjected to potential criminal liability under truancy laws. Plaintiff also asserts claims for deprivation of due process under the Fourteenth Amendment to the U.S. Constitution and Art. I, § 2 of the Louisiana Constitution stemming from Derouen's referral of M.B. to the District Attorney's FINS program pursuant to Louisiana truancy laws.[59]

The Fourteenth Amendment provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"[60]  Art. I, Section 2 of the Louisiana Constitution similarly provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."  "The Louisiana constitutional clauses are 'substantially equivalent' to federal clauses" such that courts 'apply the same analysis to…state and federal claims.'"[61]

---

[58]     *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, (1905); 910 E. Main, LLC v. Edwards, Civ. Act. No. 20-CV-965, 481 F.Supp.3d 607 (W.D. La. 8/21/2020); *Zinman* at *12 citing *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202 (M.D. Fla. 2021).

[59]     Rec. Doc. 10 at ¶¶ 21 – 45.

[60]     U.S. CONST. amend. XIV, § 1.

[61]     *Powers v. U.S.*, 783 F.3d 570, 577 (5th Cir. 2015) citing *Bd. of Comm'rs of Orleans Levee Dist. v. Dept. of Natural Resources*, 496 So.2d 281, 291 (La. 1986).

Relevant here is La. R.S. 17:233, pertaining to the issue of truancy, provides, *inter alia*:

> (b) The parent or legal guardian of a student shall enforce the attendance of the student at the school to which the student is assigned.
>
> (c)The principal of the school, or his designee, shall notify the parent…in writing on or before a student's third unexcused absence…and shall hold a conference with such student's parent…The student's parent or legal guardian shall sign a receipt for such notification.
>
> (d) The parent…of any student in kindergarten through grade eight who is considered habitually absent pursuant to the provisions of this Section shall be in violation of the provisions of Subparagraph (b) of this Paragraph and shall be punished as follows…

The Court construes Plaintiff's complaint as having alleged the deprivation of her liberty interest by initiating a truancy referral under the provisions of the Attendance Policy, which mirrors La. R.S. 17:233, without due process.

Correspondence attached to Plaintiff's original complaint shows Plaintiff was informed in a Sunday, August 22, 2021 email from Derouen, of the potential for referral to the District Attorney if her son continued to accrue unexcused absences. At the time of Derouen's email, M.B. had accrued an undisclosed number of such absences, although the Court assumes from the content of the email that such

absences numbered less than five (5).[62] Correspondence of Thursday, August 26, 2021 demonstrates that, as warned, M.B.'s continued unexcused absences resulted in Plaintiff's referral to the District Attorney.[63]

Plaintiff asserts that she was deprived of due process because Derouen failed to follow protocols regarding truancy referrals published in the Caneview Elementary Handbook's Attendance Policy.[64]  The evidence before the Court via Plaintiff's own complaint contradicts Plaintiff's assertion.  It appears that Plaintiff was referred for a conference with the District Attorney on or about Thursday, August 26, 2021.  Moreover, Plaintiff's own complaint affirms that she was aware of the prospect of truancy referral, as she alleges she entreated defendant Brad Norris, an Iberia Parish School Board member, to take up the issue of the mandate quickly, as she felt she would "have the DA knocking down my door soon."[65] Finally, Plaintiff does not allege that she was ever contacted by the District Attorney

---

[62]     Rec.Doc. 1-2 at p. 6 ("I was able to mark him [excused] for 2 days to give you time to research home schools and make the best decision for your child.  Please know that after the 2nd day, he has been marked absent and these absences are unexcused.  We are required to turn in excessive unexcused absences [to] the DA.  After five unexcused absences we will have to complete a DA referral.  If you have any questions or if you would like to have a conference in person, please contact me.")

[63]     *Id.* at p. 13.

[64]     Plaintiff asserts the Attendance Policy required Derouen to hold a conference with her prior to truancy referral.  Plaintiff's interpretation of the Attendance Policy is inaccurate, as it clearly states, "[w]hen a student misses three (3) unexcused days of school, the school will contact the parten/guardian to discuss the matter.  After the student misses five (5) unexcused days, the student and parent/guardian will be turned over to Student Services through the IPSB and referred to the District Attorney's Office for a mandatory conference."  As cited above, Principal Derouen contacted Plaintiff to inform her of the burgeoning issue regarding M.B.'s unexcused absences prior to making a truancy referral to the District Attorney.  Rec. Doc. 1 at pp. 6, 13.

[65]     Rec. Doc. 10 at ¶ 6.

or that the truancy referral complained of led to any adverse proceeding against Plaintiff.[66]

To the extent Plaintiff alleges her due process required an in-person conference with Derouen to discuss the issue of M.B.'s unexcused absences, the Court also rejects such argument on the basis that Plaintiff's own unwillingness to abide by the mask policy while on campus was an impediment to any such conference.[67]  As explained above, neither the federal or state constitution guarantee Plaintiff the right to refuse to wear a mask in public places.[68]

Plaintiff fails to allege facts which, when taken as true, state a claim for violation of her due process rights.   Taking Plaintiff's allegations regarding enforcement of the Attendance Policy as true, it is clear to the Court that Derouen followed the Attendance Policy and provided Plaintiff with ample opportunity to discuss and/or rectify M.B.'s attendance record prior to initiating a truancy referral.

Additionally, as did the Fifth Circuit in *E.T. v. Paxton*,[69] this Court rejects Plaintiff's argument that she was forced from her employment.   Rather, Plaintiff's

---

[66]     Louisiana's law of truancy is found at La. R.S. 17:221, et seq.  La. R.S. 17:233 provides for the imposition of a fine for a first violation and no more than thirty (30) days imprisonment, plus a fine not to exceed fifty (50) dollars pursuant to La. R.S. 17:221(A)(2).

[67]     Rec. Doc. 1-2 at pp. 5-6 (correspondence showing Plaintiff was unresponsive to Derouen's specific invitation for Plaintiff to come to campus to meet with her, provided she abide by the mask mandate while on campus).

[68]     *Denis v. Ige*, 2021 WL 3892657 (D. Hawai'I 2021); *Cangelosi v. Sizzling Ceasars, LLC*, Civ. Act. No. 20-CV-2301, 2021 WL 291263 (E.D. La. 2021); *Cangelosi v. Edwards*, Civ. Act. No. 20-CV-1991, 2020 WL 6449111, * 5 (E.D. La. 2020).

[69]     19 F.4th 760, n. 2 (5th Cir. 2021).

decision to leave her employment to homeschool her children was the result of her own choice and one Plaintiff is free to make. Having so chosen, however, Plaintiff may not base claims before this Court on her choice.

Considering the foregoing, dismissal is appropriate as to Plaintiff's due process claims under the federal and Louisiana constitutions. The Court specifically notes at this juncture that Plaintiff fails to name Gov. Edwards in this suit and, as argued by Defendants, the named defendants are not the appropriate parties against whom Plaintiff could obtain redress, if she had stated a viable claim in this case.

## B.     28 U.S.C. § 1343

Plaintiff's complaint purports to state a claim under 28 U.S.C. § 1343. Plaintiff's purported claim is without merit, as this provision does not create a substantive right of action, but rather it specifies federal court jurisdiction to include, as quoted by Plaintiff,

> any civil action authorized by law to be commenced by any person…to redress the deprivation, under color of any State law…of any right, privilege or immunity secured by the Constitution…providing for equal rights of citizen or of all persons within the jurisdiction of the United States.[70]

---

[70]     28 U.S.C. § 1343(a)(3).

28 U.S.C. § 1343 is a purely jurisdictional statute and does not provide the basis for a substantive claim.[71]  Accordingly, any purported claim by Plaintiff under this provision should be dismissed under Fed. R. Civ. P. 12(b)(6).

### C.    Louisiana Due Process Claim (Article I, § 3)

Article I, § 3 of the Louisiana Constitution provides that "no person shall be denied the equal protection of the laws."  This provision requires that all state laws "affect alike all persons and interests similarly situated."[72]  As discussed above, Plaintiff does not and may not claim that she was personally prevented from the exercise of her religion because of the school mask mandates implemented by IPSB. As such, she has suffered no injury-in-fact and, accordingly, lacks standing under Article III to assert an equal protection claim under the Louisiana or U.S. Constitution.[73]  Even if Plaintiff could demonstrate standing as to this claim, the Court would similarly dismiss such claim because Plaintiff fails to show that the mandate at issue classified persons according to any impermissible trait, particularly religion.[74] As expressed in a variety of cases, mask mandates are neutral law, applied equally to the citizenry.[75]  Accordingly, any purported claim by Plaintiff under this

---

[71]      *Jewell v. City of Covington, Ga.*, 425 F.2d 459, 460 (5th Cir. 1970).

[72]      *State v. Fleury*, 799 So.2d 468, 472 (La. 2001).

[73]      *Spokeo, Inc.*, 578 U.S. at 338-39 citing *Lujan*, 504 U.S. at 560 ("To establish injury in fact, a plaintiff must show that…she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'").

[74]      *Sibley v. Board of Sup'rs of Louisiana State University*, 477 So.2d 1094 (La. 1985).

[75]      *Zinman*, at *16 citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), *Oakes*, 515 F.Supp.3d at 1215 ("…mask mandates are content neutral, applying generally to everyone, and aimed at the purpose of protecting public health…").

provision should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) based on Plaintiff's lack of standing.[76]

### D.    Article I, § 20 of the Louisiana Constitution

Article I, § 20 of the Louisiana Constitution declares that "[n]o law shall subject any person to cruel or unusual punishment." Plaintiff alleges no facts tending to show that she was sentenced to any punishment for violation of any law, nor that any such sentence constitutes cruel and unusual punishment under Louisiana (or federal) law.[77] Article I, § 20 pertains to criminal sentences and, thus, provides no right of action to Plaintiff in this matter. Accordingly, any purported claim by Plaintiff under this provision should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E.    Louisiana Children's Code, Article 101

Article 101 is the Preamble of the Louisiana Children's Code and conveys no substantive rights, particularly as to Plaintiff, who retains only her individual claims in this action as explained above. Accordingly, any purported claim by Plaintiff under this provision should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[76]    Fed. R. Civ. P. 12(b)(1) permits the dismissal of one or more claims on the basis of lack of subject matter jurisdiction. "Standing is a species of subject matter jurisdiction, in that, if a party lacks standing, the court lacks subject matter jurisdiction and it must be dismissed." *In re Rhinesmith*, 450 B.R. 630, 631 (W.D. Tex. 2011) (citing *Cadle Co. v. Neubauer*, 562 F.3d 369 (5th Cir. 2009), *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).

[77]    *State v. Sepulvado*, 367 So.2d 762 (La. 1979).

### F.    Nuremburg Code

The Nuremburg Code does not create a private right of action.[78]  Accordingly, any purported claim by Plaintiff under this provision should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### G.    Conspiracy to deprive Plaintiff of civil rights in violation of 18 U.S.C. §§ 241, 242

18 U.S.C. §§ 241 and 242 are criminal statutes and, for that reason, do not create private rights of action.  Accordingly, any purported claim by Plaintiff under these provisions should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### H.    False imprisonment under Louisiana law

Under Louisiana law, the tort of false imprisonment is defined as "'the unlawful and total restraint of the liberty of the person.'"[79]  A plaintiff asserting a claim of false imprisonment must show, accordingly, the dual elements of "'(1) detention of the person; and (2) the unlawfulness of the detention.'"[80]  Plaintiff alleges no detention, nor shows that she was detained unlawfully.  Accordingly, any purported claim by Plaintiff for false imprisonment under Louisiana law should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[78]    *Ward v. Shaefer*, 2021 WL 1178291 *27 (D. Mass. 2021) citing *Heinrich ex rel. Heinrich v. Sweet*, 49 F.Supp.2d 27, 42 (D. Mass. 1999), *Robertson ex rel. Robertson v. McGee*, 2002 WL 535045 *3 (N.D. Okla. 2002).
[79]    *Hernandez v. Theriot*, 709 Fed. Appx. 755, 757-58 (5th Cir. 2017) quoting *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So.2d 743, 750 (La. Ct. App. 1999) (quoting *Crossett v. Campbell*, 48 So. 141, 143 (La. 1908).
[80]    *Id.* quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006).

Considering this Court's finding that each of Plaintiff's claims, alleging various constitutional violations related to the mandate at issue, are without merit, this Court also finds Plaintiff fails to satisfy the first requirement of her injunctive relief claim.  As detailed above, law and jurisprudence indicate that Plaintiff would not be successful on the merits of any of her individual claims.  For this reason, the Court recommends dismissal of Plaintiff's claim for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(6).  Given Plaintiff's failure to show likely success on the merits of her claims, the Court need not address the remaining requirements for injunctive relief.  Finally, considering the foregoing analysis, any claims for declaratory relief by Plaintiff should similarly be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' motion to dismiss (Rec. Doc. 11) be GRANTED in full, dismissing Plaintiff's claims on behalf of her minor children without prejudice; dismissing Plaintiff's claims on her own behalf under 28 U.S.C. § 1343, Article I, Section 20 of the Louisiana Constitution, Article 101 of the Louisiana Children's Code, the Nuremberg Code, 18 U.S.C. §§ 241-42, and Louisiana's law of false imprisonment with prejudice; and dismissing Plaintiff's claims on her own behalf under Article I, Section 3 of the

Louisiana Constitution without prejudice.  It is, accordingly, further recommended that Defendants' first motion to dismiss (Rec. Doc. 4) be DENIED as MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 24th day of February, 2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE